ROGERS, Circuit Judge,
dissenting.
It is hard to see what Bi-Lo may have done wrong here. Letting workers informally cover for a fellow worker’s disability, without knowledge of the disability, cannot be bad. It certainly should not serve as a basis for forcing an employer to continue such an accommodation once the disability is discovered to interfere with operations. The fact that the employee’s fellow crew-members later testified that “[t]he stock that Mr. Camp could not lift was only a very small part of the total stock” should not preclude Bi-Lo from fairly ascertaining Camp’s physical limits, and comparing those limits with the physical requirements of the stock person’s job.
The company did so. An examining physician determined that Camp was able to lift 10 pounds on a constant basis, 20 pounds on a frequent basis, and a maximum of 35 pounds. Whatever Bi-Lo previously allowed, it could not then as a practical matter require Camp to exceed those limits. Even without a written job description it has to be reasonable for a grocery store to decline to hire a stock clerk with such physical limitations, where the very job largely consists of moving stock. But in this case there was a pre-existing written lifting requirement for the job—“frequent” lifting, pushing, and pulling of 20-60 pounds, as well as “occasional” pushing of over 60 pounds. There is no indication that the lifting requirement was determined after Camp’s disability was disclosed, and the fact that employees were not aware of the determined physical job requirements does not in any way suggest that Bi-Lo did not objectively determine the requirements.
Accordingly, I would affirm for the reasons given in the thoughtful opinion of the district court.